IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRAH CHERRY, DIVETTA WELLS, and JAUYONTA MORRIS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| CITY OF CHICAGO, a municipal corporation; and JESSIE SMART, | ) ) ) ) |
| Defendants. | ) |

FILED
JUNE 2, 2008    YM
08CV3163
JUDGE HIBBLER
MAGISTRATE JUDGE NOLAN

No.

Judge

Magistrate Judge

JURY TRIAL DEMANDED

## COMPLAINT

### Introduction

1. Terrah Cherry, Divette Wells, and Jauyonta Morris, all employees with the City of Chicago, seek redress for sexual harassment and gender discrimination by Defendants in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. §1983 and §1988, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq.  Plaintiffs request a trial by jury.

### Jurisdiction

2. Jurisdiction of this Court is provided by 28 U.S.C. §1331 and §1343.

3. On June 12 and 13, 2007, Plaintiffs filed a charge of sexual harassment and sex discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR").

4. On May 6, 2008, Plaintiffs received notice of their right to sue on the charges from the Equal Employment Opportunity Commission.

### The Parties

5. Plaintiffs, Terrah Cherry ("Cherry"), Divetta Wells ("Wells"), and Jauyonta Morris ("Morris") are residents and employees of the City of Chicago, Cook County, Illinois.

6. At all times material hereto, Plaintiffs have been employed as laborers in the City of Chicago, Department of Streets and Sanitation.

7. Defendant, City of Chicago ("The City") is a municipality incorporated under the laws of the State of Illinois. The City of Chicago administers itself through departments, one of which is the City of Chicago Department Streets and Sanitation.

8. Defendant Jessie Smart ("Smart") was employed by the City of Chicago as a Deputy Superintendent. Smart managed and exercised supervisory authority over Cherry, Wells, and Morris. He is sued in his individual capacity.

9. The City has employed the individual defendant at all times material hereto.

10. Defendants have acted under color of state law at all material times hereto.

### Jauyonta Morris

11. On numerous occasions beginning in June 2006, when Morris was assigned to the Bureau of Loop Services location, Smart sexually harassed Morris.

12. Smart's sexually harassing conduct included, but was not limited to:

   a. In July 2006, Smart approached Morris and wrapped his arms around her waist. Smart's conduct was unwelcome and Morris found it to be harassing and offensive;

   b. Smart made numerous sexually suggestive comments in Morris' presence;

   c. Smart would stare at Morris;

    d. Smart followed Morris and other female laborers in his City vehicle while they were working on the street;

    e. Smart was aware that male workers would bring pornographic videos to work and watch them in the workplace. Smart condoned this behavior.

13. Morris complained to the Sexual Harassment Office about Smart's conduct.

14. After Morris complained about Smart's conduct, she received harassing phone calls on her cell phone, at work, and at home.

15. Morris was treated differently than other Chicago Streets and Sanitation employees because of her sex.

16. Morris was transferred to another location at 39th and Ashland and then transferred to a location at 900 E. 103rd Street. Because of the transfers, Morris lost pay and overtime opportunities.

17. In or about September, 2007, Smart appeared at Morris' place of work. Smart wore a City employee ID badge and spoke with Morris' supervisor and driver. Morris found Smart's continued presence harassing.

### Divetta Wells

18. On numerous occasions beginning in June 2006 when Wells was assigned to the Bureau of Loop Services location, Smart sexually harassed Wells.

19. Smart's sexually harassing conduct included, but was not limited to:

    a. Smart made numerous sexually suggestive comments about Wells and would stare at her when they were together;

    b. Smart spread rumors that he was going to have sex with Wells;

    c. Smart followed Wells and other female laborers in his City vehicle while they were working on the street;

20. Wells complained to the Sexual Harassment Office about Smart's conduct.

21. After Wells complained about Smart's harassment, she received harassing phone calls on her cell phone.

22. After Wells complained about Smart's harassment, Smart told other City workers that he was going to "get" Wells.

23. Wells was treated differently than other City employees because of her sex.

24. Wells was transferred away from the Bureau of Loop Services to a location in the 1st Ward. The transfer placed Wells in a location that was inconvenient for her and increased the time she spent commuting to work.

25. In or about September, 2007, Smart appeared at Well's place of work in the 1st Ward. Smart wore a City employee ID badge. Smart spoke to Wells' supervisor. Wells found Smart's presence at her new workplace harassing.

## Terrah Cherry

26. On numerous occasions beginning in June 2006, when Cherry was assigned to the Bureau of Loop Services location, Smart sexually harassed Cherry.

27. Smart's sexually harassing conduct included, but was not limited to:

    a. In July 2006, Smart grabbed Cherry's hand and tried to pull it toward his crotch;

    b. Smart asked Cherry for a kiss;

    c. Smart stared at her when they were together;

    d. Smart made sexually suggestive comments about Cherry's lips;

    e.   Smart followed Cherry and other female laborers in his City vehicle while they were working on the street.

    f.   Smart was aware that male workers would openly display pornographic books and posters at work. Smart condoned this behavior.

28.    Cherry was treated differently than other Chicago Streets and Sanitation employees because of her sex.

29.    On April 1st 2007, Cherry was transferred away from the Bureau of Loop Services to a location on the North Side of the City. Because of the transfer, Cherry lost pay and overtime.

## COUNT I
### §1983 Violation of Equal Protection - Sexual Harassment
### (Defendant Smart)

30.    Defendant Smart intentionally subjected Plaintiff to unequal and discriminatory treatment by creating or tolerating a hostile and abusive work environment that altered the conditions of Plaintiffs' employment and by knowingly failing and refusing to protect Plaintiffs from those hostile and abusive conditions.

31.    Plaintiffs were required to tolerate and endure Smart's sexual advances as a requirement for their employment.

32.    The actions of the Defendants against Plaintiff violate her equal protection right to be free from sexual harassment under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

33.    The actions of the Defendants in intentionally engaging in and condoning sexual harassment against Plaintiff has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

34. The actions of the Defendants were intentional, willful, and malicious and/or in reckless disregard for Plaintiff's rights as secured by 42 U.S.C. §1983 and the Civil Rights Act of 1991.

WHEREFORE Plaintiff respectfully requests:

A. All wages and benefits she would have received but for the discrimination, including pre-judgment interest;

B. Compensatory damages in an amount in excess of $50,000, jointly and severally against each of the named Defendants;

C. Punitive damages as allowed by law;

E. An award of attorney fees and all costs and expenses of this litigation; and

F. Such other relief as law and justice allow.

### COUNT II
### (Title VII - Sexual Harassment)

35. Against Defendant City of Chicago only, Plaintiff restates and realleges by reference paragraphs 1 through 29 above as though fully set forth herein.

36. Defendant City intentionally subjected Plaintiffs to unequal and discriminatory treatment based on sex by creating a hostile and abusive work environment that altered the conditions of Plaintiff's employment and by knowingly failing and refusing to take prompt and appropriate corrective action to protect Plaintiff from those hostile and abusive conditions.

37. Defendant City's actions violate 42 U.S.C. §2000e-2.

38. Defendant City's actions have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

A. All wages and benefits she would have received but for the discrimination, including pre-judgment interest;

B. Compensatory damages in an amount in excess of $50,000, against Defendant City of Chicago;

C. Punitive damages as allowed by law;

D. An award of attorney fees and all costs and expenses of this litigation; and

E. Such other relief as law and justice allow.

Respectfully submitted,

/s/ Benjamin Netzky
_____

Cecile Singer
Attorney at Law
200 S. Michigan Ave., Suite 1240
Chicago, IL 60604
(312) 427-3200

Benjamin Netzky
Attorney at Law
200 S. Michigan Ave., Suite 1240
Chicago, IL 60604
(312) 602-2233